UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EDWARD BARFIELD,
Plaintiff,

vs.

RON ERDOS, et al.,
Defendants.

Case No. 1:15-cv-696
Black, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff, an inmate at the Southern Ohio Correctional Facility ("SOCF") proceeding *pro se*, brings this civil rights action under 42 U.S.C. § 1983 alleging violations of his constitutional rights by prison employees. This matter is before the Court on defendants' motion for summary judgment (Doc. 61), plaintiff's response in opposition (Doc. 66), and defendants' reply memorandum (Doc. 67).

**I. Background**

On October 26, 2015, plaintiff filed his initial complaint in which he named the following defendants: Ron Erdos, William Kool, Larry Greene, Walter Sammons, Luke Vansickle, Cynthia Davis, Capt. Bell, Capt. Howard, Lt. Bower, Sgt. Felts, Sgt. Bare, and C.O. Patrick. (*See* Doc. 1-1). On October 28, 2015, plaintiff filed his first motion for leave to file an amended complaint. (*See* Doc. 2). On December 1, 2015, plaintiff filed his second motion for leave to file an amended complaint. (*See* Doc. 7).

On December 31, 2015, the Court entered an Order and Report and Recommendation that ruled on plaintiff's first and second motions for leave to file an amended complaint and conducted a *sua sponte* review under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). (Doc. 14). The Court granted plaintiff's first motion for leave to amend and viewed plaintiff's first

amended complaint as supplementing the original complaint. (*See id.* at 1 and n.1). The undersigned recommended that plaintiff's second motion for leave to amend be denied because the second proposed amended complaint failed to state a claim upon which relief can be granted. (*See id.* at 8-12). In reviewing the complaint and first amended complaint under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), the undersigned recommended that the following two claims should be allowed to proceed: (1) an excessive force claim against defendants Vansickle and Patrick and (2) a conditions of confinement claim against defendants Felts, Bell, Kool, Howard, Mahlman, and Sammons. (*See id.* at 5). The Court subsequently adopted the Order and Report and Recommendation in full. (Doc. 40).

Plaintiff's two surviving claims are the subject of the instant motion for summary judgment. Defendants move for summary judgment on the basis that they are entitled to qualified and sovereign immunity on plaintiff's excessive force claim. (Doc. 61 at 9-11). They further assert that plaintiff failed to exhaust his administrative remedies for either claim before filing this lawsuit. (*Id.* at 11-17). Finally, they argue that the evidence does not support plaintiff's excessive force claim. (*See id.* at 17-22).

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v.*

2

*Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp.2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter his duty to support his factual assertions with

3

admissible evidence. *Maston*, 832 F. Supp.2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

### III. Exhaustion of Administrative Remedies

#### A. Legal Standard

Exhaustion of administrative remedies "is mandatory under the [Prison Litigation Reform Act ("PLRA")] and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[A] prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). "[T]he failure to exhaust 'must be established by the defendants.'" *Id.* (quoting *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). Thus, defendants bear the burden of proof on exhaustion. *Id.* Because defendants bear the burden of persuasion on exhaustion, their "initial summary judgement burden is 'higher in that [they] must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id.* at 455-56 (quoting

*Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (in turn quoting 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000))).

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "To properly exhaust a claim, prisoners must tak[e] advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). "Proper exhaustion [further] demands compliance with an agency's deadlines . . . ." *Woodford*, 548 U.S. at 90. Proper exhaustion serves the necessary interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)).

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Admin. Code § 5120-9-31, involves a three-step process. First, the inmate is required to file an informal complaint with the direct supervisor of the staff member within fourteen days of the event giving rise to the complaint. Ohio Admin. Code § 5120-9-31(K)(1). Second, if the inmate is unsatisfied with the response to his informal complaint he may file a formal grievance with the inspector of institutional services at his institution of confinement. Ohio Admin. Code § 5120-9-31(K)(2). The inspector of institutional services is required to provide a written response to the inmate's grievance within fourteen calendar days of receipt of the grievance. *Id.* If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process and file

an appeal to the office of chief inspector of the Ohio Department of Rehabilitation and Correction ("ODRC") within fourteen days of the disposition of the formal grievance. Ohio Admin. Code § 5120-9-31(K)(3).

### B. The Parties' Arguments

Defendants argue that plaintiff failed to exhaust his administrative remedies as to both surviving claims because he completed only the first of the three steps required under Ohio law. (Doc. 61 at 14-16).

In response, plaintiff does not dispute that he failed to exhaust his administrative remedies. (*See* Doc. 66 at 4). Instead, plaintiff asserts that "[e]xhaustion should not be mandatory." (*Id.*). Further, he asserts that he "had been intentionally deprived of [his] right to[] redress the remedy of the situation numerous times, via grievance system." (*Id.*).

### C. Resolution

In the complaint, plaintiff alleges that during recreation on September 29, 2015, defendant Patrick demanded that he return equipment that he had been using. (Doc. 11 at 5). Plaintiff claims that after he returned the equipment, defendants Patrick and Vansickle choked him from behind, threw him against the wall, and twisted his wrist. (*Id.* at 5, 8). As to his second claim, plaintiff alleges that his cell was "intolerably out of commission" with homosexual slander and feces on the walls of the cell. (*Id.* at 6). Plaintiff indicates that he brought the condition of his cell to the attention of defendants Felts, Bell, Kool, Howard, Mahlman, and Sammons but they failed to provide him with cleaning supplies or otherwise address the condition of the cell. (*Id.*). Plaintiff admits in his complaint that he did not satisfy the requirements of the prison's grievance procedure but alleges that the corrections officers

6

assigned to his unit "would not comply when [he] had solicited for the particular things needed to proceed with these procedures." (*Id.* at 3).

On October 3, 2015, plaintiff initiated the grievance procedure as to his excessive force claim by submitting an informal complaint concerning this alleged incident. (*See* Informal Complaint Resolution 10-15-114, Doc. 61-8, Exh. H at 6). The response to this informal complaint was dated October 14, 2015. (*See id.*). Plaintiff also submitted an informal complaint concerning his claim about the conditions of his cell. (*See* Informal Complaint Resolution 10-15-82, Doc. 61-8, Exh. H at 7). The response to this informal complaint was dated October 8, 2015. (*See id.*). After receiving the responses to these informal complaints, plaintiff did not file a formal grievance or an appeal to the chief inspector. (Declaration of Eugene Hunyadi, Doc. 61-8, Exh. H at ¶ 8). Instead, he filed this lawsuit on October 26, 2015. (*See* Doc. 1).

Eugene Hunyadi, an assistant chief inspector with the ODRC, attests that plaintiff filed fourteen informal complaints between January 11, 2013 and January 11, 2016. (Hunyadi Declaration, Doc. 61-8, Exh. H at ¶ 8). Defendants have submitted a copy of plaintiff's institutional grievance history, which Mr. Hunyadi certifies to be true and accurate. (*Id.* at ¶ 9; Inmate Grievances History for Edward Barfield, Doc. 61-8, Exh. H at 4-5). This grievance history shows that while plaintiff did not submit a formal grievance regarding the incidents at issue in this lawsuit, he submitted formal grievances in the past related to other complaints. (*See* Doc. 61-8, Exh. H at 4-5). Specifically, the grievance history shows that on July 28, August 3, August 17, and September 28, 2015, plaintiff was able to submit formal grievances concerning other issues.

On this record, defendants have submitted evidence of non-exhaustion that "no reasonable jury would be free to disbelieve." *Surles*, 678 F.3d at 455-56. Based on the Hunyadi

7

declaration, the copy of plaintiff's grievance history, and plaintiff's own admission that he did not complete the grievance process no reasonable jury would find that plaintiff exhausted his administrative remedies.

Nevertheless, plaintiff alleges that he was "intentionally deprived of [his] right to[] redress the remedy of the situation numerous times, via grievance system." (*See* Doc. 66 at 4). Thus, the Court must determine whether plaintiff's failure to exhaust should be excused based on defendants' alleged interference with plaintiff's use of the grievance procedure.

Even if prison officials meet their burden of establishing non-exhaustion, summary judgment may be denied if a prisoner "has demonstrated that a genuine issue of material fact exists as to whether [defendants] improperly prevented [him] from exhausting his administrative remedies." *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 578 (6th Cir. 2014). In *Himmelreich*, the prisoner conceded that he failed to exhaust his administrative remedies but alleged that a particular prison captain intimidated him "into not filing any more Administrative Remedies." *Id.* at 577. The prisoner's statements concerning this intimidation were detailed, including the name of the prison official and the specific threats made, and were made under the penalty of perjury. *See id.* at 577-78. *See also Himmelreich v. Fed. Bureau of Prisons*, No. 4:10-cv-2404 (N.D. Ohio) (Doc. 47, PAGEID#: 282). Because the prisoner's evidence in support of his claim of intimidation was "specific" and not "vague and conclusory," the Sixth Circuit concluded that the prisoner demonstrated a genuine issue of fact on whether he was prevented by the prison captain from exhausting the grievance procedure. *See id.* at 578. *See also Surles*, 678 F.3d at 457 (denying summary judgment on exhaustion grounds where prisoner "explained that when he 'attempted to file a grievance to expose Defendants [sic] action of corruption etc., agent Christine Hemry refuse[d] to file or process these grievances.' Moreover,

8

at the Step III stage of some of Surles's re-filed grievances, he alleged that Defendants denied him access to the courts as well as the ability to exhaust his administrative remedies.").

Here, in contrast, plaintiff attempts to overcome the exhaustion dismissal with vague and conclusory allegations that prison officials interfered with his ability to exhaust the prison grievance procedure. Plaintiff alleges in his unsworn complaint that the corrections officers assigned to his unit "would not comply when [he] had solicited for the particular things needed to proceed with" the grievance procedures. (Doc. 11 at 3). Plaintiff also asserts in his unsworn response to the motion for summary judgment that he "had been intentionally deprived of [his] right to[] redress the remedy of the situation numerous times, via grievance system." (Doc. 66 at 4). Unlike the specific allegations in *Himmelreich* and *Surles,* which specified the factual context within which particular prison officials impeded the prisoner's compliance with the grievance process, plaintiff's allegations do not provide any details as to how prison officials prevented him from completing the grievance process. Plaintiff fails to identify the prison officials who allegedly prevented him from using the grievance procedure, when such actions allegedly occurred, or any of the circumstances surrounding the "numerous" times officials allegedly inhibited plaintiff in the pursuit of his administrative remedies. The vague, unsupported, conclusory allegations in plaintiff's unsworn filings are insufficient to call into question defendants' evidence of non-exhaustion and do not create a genuine issue of material fact on the exhaustion issue.

More importantly, plaintiff has presented no evidence in support of his assertion that prison officials prevented him from exhausting the prison grievance procedure. On summary judgment, plaintiff may not rely "on the mere allegations of the pleadings" and must "designate specific facts in affidavits, depositions, interrogatories, or other factual material showing

'evidence on which the jury could reasonably find for [plaintiff].'" *Maston*, 832 F. Supp.2d at 849. Plaintiff has not designated specific facts in evidence creating a genuine issue of fact to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 257 ("[P]laintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."). *See Johnson v. Mohr*, No. 2:15-cv-86, 2016 WL 5816262, at *8 (S.D. Ohio Oct. 5, 2016) (Report and Recommendation) (Deavers, M.J.), *adopted*, 2016 WL 6775293 (S.D. Ohio Nov. 16, 2016) (Graham, J.) ("[Plaintiff's] unsworn statement . . . that he properly complied with the grievance procedure, without supporting documentation, . . . falls short."); *Starner v. Clark*, No. 2:15-cv-2764, 2016 WL 1090977, at *4 (S.D. Ohio Mar. 21, 2016) (Report and Recommendation) (Deavers, M.J.), *adopted*, 2016 WL 1643039 (S.D. Ohio Apr. 26, 2016) (Frost, J.) ("Plaintiff's conclusory assertion that he feared retaliation . . . fails to persuade the Court to conclude that he is excused from exhausting his administrative remedies."); *Snelling v. Romanowski*, No. 15-14129, 2016 WL 5402965, at *1 (E.D. Mich. Sept. 28, 2016) (prisoner's "bare allegation that a grievance coordinator engaged in some unspecified type of obstruction is not enough for him to survive summary judgment"). Plaintiff's failure to come forward with any evidence in support of his assertion that prison officials prevented him from exhausting the prison grievance procedure in this case requires summary judgment for defendants.[1]

Consistent with the foregoing, plaintiff's claims should be dismissed without prejudice for failure to exhaust his administrative remedies. *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989,

---

[1] To allow a prisoner to avoid the exhaustion requirement by merely alleging he was inhibited in the process by prison officials would render the PLRA's exhaustion requirement meaningless and negate the purposes of exhaustion, i.e., "allowing a prison to address complaints . . . before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. Nothing would prevent a prisoner from avoiding the exhaustion requirement and summary judgment by simply making an unspecified allegation of interference when faced with evidence of non-exhaustion. Without specifying the who, what, when and how of a claim of interference, prison officials would never be able to come forward with proof they did not interfere with the prisoner's ability to exhaust because they would essentially be faced with proving a negative.

994 (6th Cir. 2006) (citing *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000)) ("A dismissal under § 1997e should be without prejudice."). However, in the event that the recommendation on the exhaustion issue is not adopted, the Court will also consider the merits of plaintiff's claims.

## IV. Excessive Force

### A. Legal Standard

A convicted prisoner's right to be free from the use of excessive force by prison officials is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). An Eighth Amendment claim has both an objective and subjective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The subjective component focuses on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In making this inquiry, the Court should consider the need for the use of force, the relationship between that need and the type and amount of the force used, the threat reasonably perceived by the official, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 319-21. The inmate is not required to suffer a serious injury, but the extent of his injuries may be considered in determining whether the force used was wanton and unnecessary. *Hudson*, 503 U.S. at 7.

The objective component requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Hudson*, 503 U.S. at 8). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not

11

dispositive of whether an Eighth Amendment violation has occurred." *Id.* at 580-81 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* at 581 (quoting *Hudson*, 503 U.S. at 9).

### B. The Parties' Evidence

Defendants have submitted the declarations of four witnesses to the use of force incident. First, defendant Vansickle attests:

> 3. On September 29, 2015, I heard Correctional Officer Patrick order Inmate Edward Barfield (666-013) to pull up his pants, which Barfield ignored. Barfield was then ordered to get his identification and get dressed because he was being sent back to his housing unit.
>
> 4. At this time, Barfield disregarded the order and sat down at the end of the bleachers. A few minutes later, Officer Patrick and I, Officer Van Sickle, walked to the bleachers to escort Barfield out of the gym.
>
> 5. At this time, Barfield said "you motherfuckers are bullshit" and walked to the equipment room and threw his equipment inside. Barfield then began walking toward the exit and attempted to exit. I gave a direct order to stop. Barfield ignored this order and attempted to exit unescorted. Barfield's repeated refusal to obey orders indicated that he could be a danger to institutional security.
>
> 6. I employed an escort position on Barfield by taking a hold of his left elbow and right shoulder and brought him against the interior wall of the gym so that he would not continue through the hallways by himself. Barfield resisted this restraint. As a result, Officer Patrick handcuffed him. We held Barfield until other officers could arrive to escort him to his housing unit. I did not choke Barfield nor did I witness any other officer choke him.

(Declaration of Luke Van Sickle, Doc. 61-2, Exh. B at ¶¶ 3-6). In his declaration, defendant Patrick attests:

> 3. On September 29, 2015, I ordered Inmate Edward Barfield (666-013) to pull up his pants, which Barfield ignored.

12

> 5. Later, Barfield used threatening language against myself and Officer Van Sickle and then began walking toward the exit and attempted to exit despite Officer Van Sickle's orders to stop.
>
> 6. Officer Van Sickle took a hold of Plaintiff's left elbow and right shoulder and brought him against the interior wall of the gym. Barfield became aggressive and resisted this restraint so I handcuffed him. Barfield was held there until other officers could arrive to escort him to his housing unit. I did not choke Barfield nor did I witness any other officer choke him.

(Declaration of Matthew Patrick, Doc. 61-5, Exh. E at ¶¶ 3, 5-6). Corrections Officer Daniel Leesburg attests in his declaration:

> 3. On September 29, 2015, my backup assistance was requested at the M-2 gymnasium.
>
> 4. When I arrived, Inmate Edward Barfield was being held outside of the M-2 gymnasium by Officers Van Sickle and Patrick. Inmate Barfield did not appear to be fully compliant with their escort position. Inmate Barfield was using threatening language with the officers.
>
> 5. I then observed Officer Moore escort Inmate Barfield towards the J-2 segregation unit. His combative language continued. I did not choke Barfield nor did I witness any other officer choke him.

(Declaration of Daniel Leesburg, Doc. 61-3, Exh. C at ¶¶ 3-5). Corrections Officer Allen Moore attests:

> 3. On September 29, 2015, my backup assistance was requested at the M-2 gymnasium.
>
> 4. Upon my arrival, Inmate Edward Barfield was using profane and threatening language to all the officers present.
>
> 5. I escorted Inmate Barfield to the J-2 segregation unit. His combative language continued through the duration of my escort, which was otherwise without incident. I did not choke Barfield nor did I witness any other officer choke him.

(Declaration of Allen Moore, Doc. 61-4, Exh. D at ¶¶ 3-5).

In addition to these declarations from witnesses to the incident, defendants have submitted the declaration of Teresa K. Hill, R.N., the nurse who examined plaintiff after the

13

incident. (*See* Declaration of Teresa K. Hill, R.N., Doc. 61-6, Exh. F). Nurse Hill attests that she examined plaintff on September 29, 2015 following an alleged use of force incident. (*Id.* at ¶¶ 4-5). During the examination, plaintiff denied having any injuries, medical problems, or medical issues. (*Id.* at ¶ 5). Plaintiff refused to move to the front of his cell so that Nurse Hill could perform a thorough medical examination. (*Id.* at ¶ 6). Thus, Nurse Hill "could only do a visual examination of [plaintiff] at that time." (*Id.*). Nurse Hill attests that during her visual examination, plaintiff "displayed no physical injury of any kind nor did he present any physical symptom consistent with a physical trauma or any other type of injury." (*Id.*). Nurse Hill determined that plaintiff "required no medical treatment of any kind." (*Id.* at ¶ 7).

Plaintiff has not submitted any evidence to support the allegations of excessive force in his complaint.

### C. Resolution

To support their argument that they did not use excessive force against plaintiff, defendants have submitted declarations from Vansickle, Patrick, Leesburg, Moore, and Hill. (Docs. 61-2, 61-3, 61-4, 61-5, 61-6). These declarations constitute evidence that: (1) defendants employed reasonable force in response to plaintiff's threatening language and aggressive behavior; and (2) plaintiff was not injured in any way as a result of this incident. (*See generally id.*). In response, plaintiff has provided no evidence to support the allegations in his complaint.

However, in opposing defendants' properly supported motion for summary judgment, plaintiff must "designate specific facts in affidavits, depositions, interrogatories, or other factual material" from which a reasonable jury could find in his favor. *Maston*, 832 F. Supp.2d at 849. He "cannot rest on the mere allegations of the pleadings." *Id.* Plaintiff's unsworn complaint, which was not signed under penalty of perjury, does not constitute evidence to show that there is

14

a genuine issue of material fact for trial. (*See* Doc. 11); *see Maston*, 832 F. Supp.2d at 851-52 (holding that a pro se party cannot rely on allegations or denials in unsworn filings when opposing a motion for summary judgment). Thus, because plaintiff has failed to submit any evidence that might show that his claim rises to the level of a constitutional violation, summary judgment should be granted to defendants on this claim.

## V. Conditions of Confinement

The Supreme Court has held that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). The moving party's initial burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Here, defendants have failed to meet their initial summary judgment burden as to plaintiff's conditions of confinement claim because their motion did not provide any argument or identify any evidence (or absence thereof) that addressed the merits of this claim. (*See generally* Doc. 61); *Celotex Corp.*, 477 U.S. at 323.

Nevertheless, even if the moving party fails to meet this initial responsibility, district courts "possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that []he had to come forward with all of his evidence." *Celotex Corp.*, 477 U.S. at 326 (citations omitted). While courts are permitted to grant summary judgment *sua sponte*, this practice is disfavored in the Sixth Circuit. *See Saxe v. Dlusky*, 162 F. App'x 430, 432 (6th Cir. 2006) ("Sua sponte grants of summary judgment are disfavored.") (citing *Emp'rs Ins. of*

15

*Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995)). Here, although defendants moved for summary judgment on both of plaintiff's claims, they did not identify any basis for granting summary judgment on the conditions of confinement claim related to the merits of that claim. (*See* Doc. 61 at 2). Instead, defendants identified plaintiff's failure to exhaust administrative remedies as the sole basis for granting summary judgment on the conditions of confinement claim. (*See id.* at 2, 11-17). This was insufficient to place plaintiff on notice that he needed to produce evidence concerning the merits of his conditions of confinement claim in opposing defendants' motion for summary judgment. *See Chance v. Mahoning Cty.*, 105 F. App'x 644, 649-50 (6th Cir. 2004) (holding district court abused its discretion in *sua sponte* granting summary judgment against plaintiffs on claim for intentional infliction of emotional distress where defendants' motion failed to give plaintiffs notice that summary judgment could be entered on the merits of that claim). Accordingly, in the event that the Court declines to adopt the undersigned's conclusion as to the exhaustion issue, the Court should deny summary judgment as to the conditions of confinement claim.

## VI. Conclusion

Based on the foregoing, it is **RECOMMENDED** that defendants' motion for summary judgment (Doc. 61) be **GRANTED** and that plaintiff's claims be **DISMISSED WITHOUT PREJUDICE** for failure to properly exhaust his administrative remedies.

In the alternative, if the Court declines to adopt the recommendation as to exhaustion, it is recommended that defendants' motion for summary judgment be **GRANTED** as to plaintiff's excessive force claim but **DENIED** as to plaintiff's conditions of confinement claim.

**IT IS SO RECOMMENDED.**

Date: 2/6/2017

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EDWARD BARFIELD,
    Plaintiff,

Case No: 1:15-cv-696
Black, J.
Litkovitz, M.J.

vs.

RON ERDOS, et al.,
    Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).